669 P.2d 108

SUN-AIR ESTATES, UNIT 1, A
Horizontal Property Regime,
Plaintiff/Appellant,

v.

Helen MANZARI; Tom Koza and Fran Koza, husband and wife; Homer Lieber and Dorothy Lieber, husband and wife; J.B. Cox and Gertrude Cox, husband and wife; Harold Killen and Helena Killen, husband and wife; Thomas Flaherty and Rosemary Flaherty, husband and wife, Defendants/Appellees.

No. 1 CA-CIV 6374.

Court of Appeals of Arizona,
Division 1.

May 5, 1983.

Rehearing Denied June 13, 1983.

Review Denied Sept. 15, 1983.

Amelia D. Lewis, Peoria, for plaintiff/appellant.

William Younger Wood, Glendale, for defendants/appellees.

## OPINION

HATHAWAY, Judge.

Appellant condominium complex brought this lawsuit to collect sums from the appellees for their pro rata share of an insurance premium on a blanket policy of insurance on the condominium complex in which appellees lived. The case was tried to the court and judgment was entered for appellees.

The court found as "facts" that the Declaration of Horizontal Regime was binding and that paragraph G-8 of the declaration requires 100% of the owners to agree to any amendment and 100% did not do so in this case. The court also found as a fact that paragraph K is ambiguous. That paragraph reads:

"It shall be the responsibility of each of the respective owners ... to obtain fire insurance and liability insurance on the apartment units and the respective common elements and facilities which are owned or occupied by such owners."

The court found that it was reasonable to conclude that the appellees had the right to obtain their own insurance separate and apart from the blanket policy. Additionally, it was found that the proposed bylaw that required the owners to participate in the blanket policy was invalid because it was adopted by less than 100% of the own-

ers. We believe the court erred in finding a violation of paragraph G-8 and an ambiguity in paragraph K and we find the bylaw change is in compliance with the declaration and is valid and enforceable.

■ Whether terms of an agreement are ambiguous is a question of law and the mere fact that the parties disagree as to the meaning of the terms does not, in and of itself, establish an ambiguity. *Grossman v. Hatley,* 21 Ariz.App. 581, 522 P.2d 46 (1974). We are able to read the documents themselves and decide whether they are ambiguous and need to be interpreted since the "facts" as found by the trial court are legal conclusions and we are free to evaluate the evidence unrestricted by the rule compelling us to construe evidence most favorably to support the judgment. *Tovrea Land and Cattle Company v. Linsenmeyer,* 100 Ariz. 107, 412 P.2d 47 (1966).

Under A.R.S. § 33–561, the condominium board is required to make provisions for the maintenance of the common elements, including the assessment of expenses and the disposition of hazard insurance proceeds, and is required to adopt bylaws and rules and regulations. The declaration was recorded in 1972 and included paragraph K which states:

"It shall be the responsibility of each of the respective owners ... to obtain fire insurance and liability insurance on the ... units and the respective common elements and facilities which are owned or occupied by such owners."

Pursuant to the authority granted by statute and its declaration, appellant adopted bylaws in 1975 which, in pertinent part, read:

"1.10 A quorum for the transaction of business ... shall require fifty percent (50%) of all owners to be present in person or by proxy. A vote of sixty percent (60%) of those present in person or by proxy shall constitute a legal majority for the transaction of business.

\* \* \* \* \* \*

1.19 These By-laws may be modified or amended by the vote of sixty percent

(60%) of the members present in person or by proxy.... Voting shall be by secret ballot ...."

At the annual meeting on April 3, 1979, the following motion was adopted by a voice vote:

"... that the members accept the Blanket Condominium Insurance from State Farm Insurance Company, in the amount of $48 per unit per year."

The board thereafter notified all owners to cancel outside property insurance as of July 1, 1979, as the blanket policy would then be in effect but to retain their own personal property insurance for the contents of their individual condominiums. A complaint was received from one of the appellees regarding the procedure used to assess the owners for the blanket policy and in February 1980, a special meeting of the owners was held to incorporate a blanket insurance amendment into the bylaws. At this meeting, a vote by secret ballot passed by a 100–1 margin. The amendment reads:

"2.12 Insurance. A blanket insurance policy for the condominium for full value of property ... is a mandatory requirement of all members ... Insurance to cover all dwellings, liability on all common areas ...

Insurance premiums to be assessed and paid as part of monthly dues from condominium fees. Board of directors to hold master policys, [sic] and insurance certificates are provided for all condominium members.

Each member is responsible to obtain insurance on personal property, interior contents and inside liability as they deem necessary and at their own expense."

■ Each section of an agreement must be read in relation to each other to bring harmony, if possible, between all the parts of the writing. *Brisco v. Meritplan Insurance Co.,* 132 Ariz. 72, 643 P.2d 1042 (1982). The same principle applies here where the bylaws should be read in conjunction with the declaration. When we do that, there is no ambiguity. Paragraph K of the declaration merely assigned to the owners the responsibility of adequately insuring the common area of the complex. It does not state, as appellee Flaherty maintained in court "... all owners will carry their own insurance." The responsibility in paragraph K could have been borne individually as was done prior to the motion of April 3, 1979, which was subsequently incorporated as an amendment to the bylaws by the necessary margin and by the necessary secret ballot in February 1980. To read the documents so as to require the 160-plus owners to carry 160-plus insurance policies on the complex's common areas not only creates an ambiguity where none exists but creates an insurance nightmare in the case of a claim where coverage might overlap. By reading the documents as we have, a claim for coverage involving a common area would involve but one policy and is certainly what the drafters of the declaration intended. The language quoted in *Makeever v. Lyle,* 125 Ariz. 384, 609 P.2d 1084 (App.1980) is apropos:

" 'It appears to us that inherent in the condominium concept is the principle that to promote the health, happiness and peace of mind of the majority of the unit owners since they are living in such close proximity and using facilities in common ...' " 125 Ariz. at 387, 609 P.2d 1084.

The bylaw providing for the blanket policy was passed according to the required procedure and complies with the declaration and the applicable statute. There was no amendment to the declaration and the court's "finding" that such amendment lacked the necessary 100% vote is of no moment.

The judgment is reversed and the case remanded to allow for entry of judgment in favor of appellant and to allow the court to award costs and fees as it deems just.

HOWARD, C.J., and BIRDSALL, J., concur.

NOTE: This case was decided by the Judges of Division Two as authorized by A.R.S. § 12–120(E).